UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| Musa Daramy et al., | CASE NO. 21-1431 MJP |
| Plaintiffs, | ORDER DENYING MOTION TO ENFORCE SETTLEMENT AND REOPENING CASE |
| v. | |
| Arctic Storm Management Group LLC, | |
| Defendants. | |

This matter is before the Court on various motions by both sides.  Having considered the motions and the record, the Court orders the following:

- The Court STRIKES Plaintiffs' praecipe to enter judgment, (Dkt. No. 40);

- Defendants' sealed motion to enforce settlement, (Dkt. No. 37), is DENIED;

- Defendants' motion to seal, (Dkt. No. 36), is DENIED, and the clerk is directed to UNSEAL the documents filed under seal;

- Plaintiffs' motion to reopen the case, (Dkt. No. 32), is GRANTED;

- The motion by Plaintiffs' counsel for leave to withdraw from representing Plaintiff Mohamed Ali, (Dkt. No. 33), is GRANTED; and

- The Parties shall submit a joint status report within 14 days of the date of this Order, after which the Court will issue a new schedule and trial date.

1

**Background**

2

### A.    Complaint and Anticipated Settlement

3      This is an employment discrimination case filed by twenty-one former crewmembers of a

4  fishing vessel.  Plaintiffs are Black and are from various countries, including Mali, Mauritania,

5  Sierra Leone, Ghana, Gambia, Guinea, Ivory Coast, Sudan, and South Sudan.  They allege

6  pervasive discrimination in working conditions, pay, and promotion on the basis of race.  The

7  Complaint contains specific allegations by each plaintiff.  Plaintiffs raise claims under Title VII,

8  Washington's Law Against Discrimination, and 42 U.S.C. § 1981 on theories of intentional

9  discrimination, hostile work environment, retaliation, and wrongful termination.  They seek seek

10  compensatory and punitive damages and attorney fees.  (Dkt. No. 1, "Complaint.")

11      Shortly after filing the complaint, individual plaintiffs began filing notices that they had

12  accepted an offer of judgment from Defendants.  (See Dkt. Nos. 8–27.)  In total, eighteen out of

13  twenty-one plaintiffs filed a notice that they had accepted an offer of judgment by Defendants.

14  Two plaintiffs filed notices of acceptance on November 2, 2021.  (Dkt. Nos. 6–11.)  The other

15  plaintiffs filed on November 4.  (Dkt. Nos. 12–27.)  Although most plaintiffs had filed notices

16  they had accepted an offer of judgment, the clerk did not enter judgment and no immediate

17  request was made to do so.

18      Six weeks later, after the Court issued an order to submit a joint status report and set

19  initial deadlines, the parties filed a stipulated motion to stay the case schedule pending

20  completion of settlement:

21      The parties through counsel have agreed to a settlement of all claims in this case,
        subject to all Plaintiffs executing a settlement agreement.  Plaintiffs' counsel is
22      working diligently to communicate with and secure their clients' execution of the
        settlement agreement.

23

24

1   (Dkt. No. 30.)  Taking note that the parties had informed the Court that they had reached a

2   settlement, the Court dismissed the case.  (Dkt. No. 31.)  The Court's dismissal order permitted

3   any party to move to reopen the case within 60 days if settlement had not been perfected.  (Id.)

4       **B.      The Instant Motions**

5           Several weeks later, the parties began filing a flurry of motions now before the Court.

6               *1.      Plaintiffs' motions to reopen and withdraw.*

7           Plaintiffs timely moved to reopen the case, stating that settlement had not been perfected.

8   (Dkt. No. 32.)  Their attorneys also filed a motion to withdraw as counsel to Plaintiff Mohamed

9   Ali.  (Dkt. No. 33.)  Plaintiffs' counsel did not provide a specific reason in for withdrawing but

10  noted that attorneys are ordinarily permitted to withdraw 60 days before discovery cutoff.  (Id.

11  (citing Local Civ. R. 83.2(b)(1).)  If their motion to reopen is granted, they reasoned, their

12  motion to withdraw would be timely.

13          Defendants support the motion to reopen but only for the purpose of enforcing the

14  settlement.  (Dkt. No. 38.)  They oppose the motion to withdraw, noting the lack of explanation

15  by Plaintiffs' attorneys and arguing they would be prejudiced by delaying resolution of the case.

16  (Dkt. No. 39.)  With respect to the motion to withdraw, Plaintiffs' counsel clarified on reply that

17  they are moving to withdraw because of a conflict—all but one of the plaintiffs ultimately agreed

18  to Defendants' global settlement offer.  (Dkt. No. 44.)

19              *3.      Defendants' motions to seal and enforce settlement.*

20          Defendants filed a motion to seal, (Dkt. No. 34), and a sealed motion to enforce the

21  settlement, (Dkt. No. 36).  Defendants claim the settlement was agreed to via counsel.  They ask

22  to file the motion under seal for two reasons: they claim this is merely a private dispute and that

23  the settlement agreement included a confidentiality provision.  (Dkt. No. 34.)  Plaintiffs dispute

24

1   the settlement was consummated and claim its terms were conditioned on acceptance by all

2   individual plaintiffs.  (Dkt. No. 45.)  They also oppose the motion to seal.  (Dkt. No. 42.)

3       Plaintiffs filed a surreply asking the Court to strike an exhibit Defendants submitted in

4   their reply declaration.  (Dkt. No. 49.)  They claim Defendants violated the Washington Rules of

5   Professional Conduct by disclosing confidential attorney-client communication, as well as

6   Federal Rule of Evidence 408, and that filing the exhibit is also an attempt to mislead the Court.

7          *4.*     *Plaintiffs' praecipe to enter judgment and defendants' motion to strike.*

8       Plaintiffs then filed a praecipe to enter judgment with respect to the individual plaintiffs

9   who had filed notices that they had accepted Defendants' offer of judgments.  (Dkt. No. 40.)

10   This motion was directed to the Clerk.  Defendants ask the Court to strike the praecipe as

11   improper, arguing that Plaintiffs never filed a request to enter judgment because the global

12   settlement had not yet been completed.  (Dkt. No. 41.)

13   **Discussion**

14       These motions all turn on whether there is a settlement between the parties.  However,

15   there is a predicate issue that must be decided, which is what effect, if any, the Court should give

16   to the notices filed by eighteen plaintiffs that they had accepted Defendants' offer of judgment.

17   If those notices reflect valid individual settlements, then at least the claims of those plaintiffs

18   have been settled.  If the claims were settled an individual basis, the Court would direct the clerk

19   to enter judgment, per Plaintiffs' praecipe.  If they were settled as part of a comprehensive

20   settlement, the Court would consider the motion to enforce settlement.

21       The Court discusses the instant motions as follows.  First, it strikes Plaintiffs' praecipe

22   because Defendants' offers of judgment fall short of Rule 68.  Second, it denies Defendants'

23   sealed motion to enforce settlement and Defendants' motion to seal.  The parties did not agree on

24

a final settlement and Defendants have not adequately justified sealing any of the records here.
The Court denies Plaintiffs' motion to strike the exhibit Defendants submitted on reply.  After
concluding there is no settlement—on an individual or global basis—the Court grants Plaintiffs'
motions to reopen and withdraw.

**I.      Plaintiffs' Praecipe to Enter Judgment under Rule 68**

Plaintiffs filed a praecipe to enter judgment, asking the clerk to enter judgment for
eighteen plaintiffs who had filed notices that they had accepted Defendants' offer of judgment.
(Dkt. No. 40.)  Defendants ask the Court to strike the praecipe.  (Dkt. No. 41.)  They argue it is
improper for Plaintiffs to use a praecipe here because the reason they did not request entry of
judgment earlier is because the settlement had not yet been finalized.  Neither side is correct.

**A.      Legal Standard**

Rule 68 provides a mechanism for a party defending against a claim to make an offer of
judgment:

> At least 14 days before the date set for trial, a party defending against a claim may
> serve on an opposing party an offer to allow judgment on specified terms, with
> the costs then accrued.  If, within 14 days after being served, the opposing party
> serves written notice accepting the offer, either party may then file the offer and
> notice of acceptance, plus proof of service.  The clerk must then enter judgment.

Fed. R. Civ. P. Rule 68(a).  One benefit of making an offer of judgment is that it minimizes
defense costs.  If a person declines the offer and later prevails, but the judgment is not more
favorable than what was offered, that person must pay the offeror's costs incurred after the date
of the offer.  Id. at Rule 68(d).  Acceptance of a valid offer of judgment under Rule 68 is
generally self-executing and judgment is entered by the clerk.

**B.      Can the Clerk Enter Judgment?**

There are two problems with Plaintiffs' request to enter judgment.  First, the Court cannot
determine whether all the offers are valid because the record contains only the terms of offers

1   made to two of the eighteen plaintiffs who accepted.  It is fair to assume that the terms of all the

2   offers were identical—Defendants have not challenged the notices of acceptance and the only

3   two offers in the record are identical—but that is nevertheless an assumption.

4       The second problem is more significant: the offers in the record do not satisfy the

5   requirements of Rule 68.  Plaintiffs filed copies of the offers Defendants made to two of the

6   plaintiffs.  (Dkt. Nos. 6, 8.)  They are identical except for the names of the plaintiff.  Each offer

7   states that Defendants consent to entry of judgment in the amount of $5,000, exclusive of

8   attorney fees to the date of the offer, "in full and final resolution of all claims in this matter that

9   were brought or could have been brought by Plaintiff against any Defendant."  (Dkt. Nos. 6, 8.)

10      But a Rule 68 offer must include costs: "a party defending against a claim may serve on

11  an opposing party an offer to allow judgment on specified terms, <u>with the costs then accrued</u>."

12  Fed. R. Civ. P. Rule 68(a) (emphasis added).  The Supreme Court has explained that the essential

13  components of a Rule 68 offer are judgment for the claim and for the costs:

14          The critical feature of this portion of the Rule is that the offer be one that <u>allows
            judgment to be taken against the defendant for both the damages caused by the</u>
15          <u>challenged conduct and the costs then accrued</u>. . . . As long as the offer does not
            implicitly or explicitly provide that the judgment <u>not</u> include costs, a timely offer
16          will be valid.

17  <u>Marek v. Chesny</u>, 473 U.S. 1, 6 (1985) (emphasis in original).  The term "costs" in Rule 68

18  refers to "all costs properly awardable under the relevant substantive statute."  <u>United States v.</u>

19  <u>Trident Seafoods Corp.</u>, 92 F.3d 855 (9th Cir. 1996).  Plaintiffs would be entitled to attorney fees

20  if they prevailed on their employment-discrimination claims.  <u>E.g.</u>, 42 U.S.C. § 2000e-5(k).

21      If the offer had included costs—or even been silent about costs, <u>see Marek</u>, 473 U.S. at

22  6—it would have been valid.  It otherwise meets the requirements of Rule 68: offer of judgment

23  and acceptance within 14 days.  <u>Compare</u> <u>Miller v. City of Portland</u>, 868 F.3d 846, 849 (9th Cir.

24  2017) (Rule 68 offer for $1,000 "plus costs (excluding any prevailing fee), and including

reasonable attorney's fees to be determined by the Court" was valid and timely accepted). Because Plaintiffs have not provided the terms of the offers for sixteen plaintiffs, and because the only offers they have filed do not meet the requirements of Rule 68, the clerk cannot enter judgment.  The Court strikes Plaintiffs' praecipe to enter judgment.

## II.     Defendants' Sealed Motion to Enforce Settlement and Motion to Seal

For their part, Defendants claim the parties reached a comprehensive settlement through counsel which supercedes the individual offers of judgment.  They filed a motion to seal and a sealed motion to enforce settlement.  The merits of the motion to seal depend in part on the existence of a completed settlement, so the Court first discusses the motion to enforce settlement.

### A.     Legal Standard

The Court has inherent authority to enforce a settlement agreement entered into by the parties of a case before it.  In re City Equities Anaheim, Ltd., 22 F.3d 954, 957 (9th Cir. 1994). However, a party seeking to enforce a settlement has to show that there are no disputed material facts concerning formation, consummation, or terms of settlement.  Id.  If there are material facts in dispute, the Court must hold a hearing to find the necessary facts.  Id. (citing Callie v. Near, 829 F.3d 888, 890 (9th Cir. 1987)).  A hearing is unnecessary here because there are no genuine disputes over the material facts.

An agreement to settle a legal dispute is a contract, the enforcement of which is governed by principles of contract law.  Jeff D. v. Andrus, 899 F.2d 753, 759 (9th Cir. 1989).  The Court applies the contract law of the state in which it sits.  Id.  To form a contract under Washington law, parties must objectively manifest mutual assent to the essential terms.  Yakima Cnty. Fire Prot. Dist. No. 12 v. City of Yakima, 122 Wn.2d 371, 388 (1993).  The terms must be

1  sufficiently definite that a court can decide what the contract means for the rights and obligations

2  of the parties.  Keystone Land & Develop't Co. v. Xerox Corp., 152 Wn.2d 171, 178 (2004).

3  **B.     Offer and Purported Acceptance**

4        Defense counsel David Bratz wrote to Plaintiffs' attorneys on November 5, 2021 with a

5  comprehensive settlement offer:

6        I just confirmed with [the mediator] our clients' authorization to resolve this case
       on a global basis for $160,000 in exchange for a complete release of all claims, as
7        set forth in the attached Settlement Agreement and Release.  Please let me know
       an anticipated time frame for all your clients' execution of the Settlement
8        Agreement.

9  (Dkt. No. 37, Declaration of David Bratz, Ex. A at 1.)

10        The attached settlement proposal identifies each plaintiff by name and provides that

11  Defendants will pay a lump sum of $160,000 to Plaintiffs in exchange for release of all claims.

12  (Id. at 3–5.)  Under the proposal, Plaintiffs would take no further action with respect to the

13  notices they filed accepting Defendants' offers of judgment and would agree to dismiss their

14  claims with prejudice.  The proposal also states that it is "not effective unless and until fully

15  executed by all [Plaintiffs]," and includes signature lines for each plaintiff as well as their

16  attorneys.  (Id. at 5–16.)

17        Reba Weiss, one of Plaintiffs' attorneys, wrote back the same day:

18        The Settlement Agreement documents have been received.  Thank you.  As you
       know, some of our clients are at sea so it may take a week or so until we can
19        obtain everyone's signatures.  I will keep you posted.

20        I'm pleased that, with [the mediator's] help, we were able to resolve this case.
       Have a good weekend too.
21
   (Id. at 17.)
22

23

24

1

### C.    Did Plaintiffs Accept the Offer?

2        Defendants argue Plaintiffs' accepted the offer when Ms. Weiss said she was pleased the

3  case could be resolved, a statement they say indicates Ms. Wiess believed the settlement was

4  complete.  This is a rather superficial conclusion and the Court rejects it.  Viewed in proper

5  context, Ms. Weiss's response did not objectively manifest acceptance, for four reasons.  First,

6  the settlement was designed to be comprehensive, signed by all individual plaintiffs, and not

7  effective until it was so signed.  Second, Ms. Weiss's response itself is insufficient to support

8  summary enforcement of a settlement.  Third, actions taken by counsel for both sides show they

9  did not think there was a final deal and continued to work toward a completed settlement.

10 Finally, the representation of twenty-one plaintiffs carries an inherent potential conflict of

11 interest.  This fact provides important context for interpreting Ms. Weiss's response and explains

12 the need to obtain final authorization before a settlement could be completed.

13               *1.    The proposal was contingent on settling all claims.*

14        The settlement proposal was designed to be global and was contingent on releasing

15 Defendants from liability for all claims that were raised or could have been raised by any of the

16 plaintiffs.  This is reflected in Mr. Bratz's email as well as the terms of the proposal.  (Bratz

17 Decl., Ex. A at 1 and 3–5.)  The settlement had several terms that reflect these contingencies.

18 The release of the $160,000 to settle all claims was contingent on receipt of the "original fully

19 executed Agreement."  (Id. at 3, ¶ 1.)  All plaintiffs were required to release Defendants from

20 liability for all claims.  (Id. at 3–4, ¶¶ 2–3.)  The settlement could not be modified except by

21 written agreement by all parties and would not be effective "unless and until fully executed by all

22 [Plaintiffs]."  (Id. at 5, ¶¶ 11, 13.)  Finally, the proposal included signature lines for all Plaintiffs

23

24

1  and their attorneys.  (Id. at 6–16.)  All of these provisions reflect Defendants' intent not to be

2  bound unless all Plaintiffs signed and released them from all claims.

3  In support of Defendants' position, it is true that parties can be bound by objectively

4  manifesting intent to essential terms even if they contemplated a more formal signing in the

5  future.  Morris v. Maks, 69 Wn.App. 865, 872 (1993).  However, applying that rule is not

6  supported by the record here.  The signing and release by all Plaintiffs was an essential term

7  because the agreement would not take effect until signed by all Plaintiffs and Defendants would

8  not release any funds until receiving a fully executed agreement signed by all Plaintiffs.

9  *2.  Plaintiffs did not objectively manifest assent.*

10  In addition, Ms. Weiss's response falls short of what courts require to summarily enforce

11  settlement.  Defendants cite a decision by this Court in support.  While that case is instructive, it

12  supports Plaintiffs' position here.  In Kruger v. Credit Intern. Corp., the Court considered

13  communication between counsel, just as in this case.  2012 WL 1534023, C10-1374 RSM (W.D.

14  Wash., Apr. 30, 2012).  The defendant's attorney sent an email offer of settlement.  The

15  plaintiff's attorney responded with a counteroffer, asking for additional terms.  The Court found

16  that the following response was an unequivocal acceptance: "Thank you for your patience, I was

17  finally able to get confirmation today from the client that we have a deal."  Id. at 3.  The Court

18  found there was no dispute about any material elements of the settlement.

19  Here, Ms. Weiss wrote beack that she had received the proposal.  (Bratz Decl., Ex. A at

20  17.)  In response to his question about a timeframe for execution, she wrote, "As you know,

21  some of our clients are at sea so it may take a week or so until we can obtain everyone's

22  signatures.  I will keep you posted."  (Id.)  Finally, she expressed positive sentiment about being

23

24

1   able to settle the case: "I'm pleased that, with [the mediator's] help, we were able to resolve this
2   case." (Id.)

3          Defendants point to that last sentence as an unequivocal acceptance.  But, in contrast with
4   Kruger, she did not write back that she had confirmed with her twenty-one clients that they
5   agreed to the proposed settlement.  Although no magic words are required, she did not say "we
6   have a deal" or the equivalent.  In fact, she indicated in the preceding sentence that some clients
7   were at sea and she would need time to get their authorization.  It would be unreasonable to read
8   those two sentences together to conclude she had confirmed a deal with all of her clients,
9   particularly in light of the fact that the settlement was designed to be global and contingent on
10  acceptance by all Plaintiffs.  Compare Kaiser v. CSL Plasma Inc., 2017 WL 735926, C15-842
11  RSM (W.D. Wash., Feb. 24, 2017) (distinguishing Kruger because confidentiality provision was
12  material and parties had not agreed to its scope).

13              *3.      Counsel for both sides acted as if settlement was incomplete.*

14          Communication by attorneys on both sides show they believed the settlement was
15  incomplete.  Mr. Bratz sent the offer on a Friday, and Ms. Weiss responded the same day to
16  acknowledge receipt and respond to his question about a timeframe for completing settlement.
17  On Monday, Plaintiffs' attorney Gordon Webb requested changes to the proposal to facilitate
18  quick completion, noting that many of their clients were overseas and difficult to reach.  (Bratz
19  Decl., Ex. A at 20–21.)  These requests included removing the requirement that signatures be
20  notarized, removing the attorney acknowledgment, and limiting the waiver of claims to the scope
21  of representation, which included employment, discrimination, and harassment claims raised in
22  this case.  (Id.)

23

24

At first, Mr. Bratz responded by stating he was "surprised" to learn Plaintiffs' counsel did not believe they had reached an agreement.  (Id. at 19–20.)  He said his clients would not agree to any of the changes and would consider moving to enforce the settlement.

However, Mr. Bratz's later communication conflicts with this position.  After Plaintiffs' counsel had still not obtained sign-off from all their clients, the parties discussed a stipulated motion to stay case deadlines so that settlement could be completed.  Mr. Bratz wrote:

> Further to my conversation with Gordon earlier this week, attached is a proposed stipulated joint motion to stay case deadlines pending completion of settlement. Please let me know if we've your permission to file it.  Thanks.

(Bratz Decl. Ex. A at 33 (emphasis added).)

Perhaps more important, in their stipulated motion, the parties stated:

> The parties through counsel have agreed to a settlement of all claims in this cases, subject to all Plaintiffs executing a settlement agreement.   Plaintiffs' counsel is working diligently to communicate with and secure their clients' execution of the settlement agreement.

(Dkt. No. 30 at 2.)  They asked for an order staying all case deadlines "pending completion of settlement" and requiring them to submit a joint status report "advising of the status of settlement completion if the parties have not on or before that date filed a stipulation and order of dismissal with prejudice."  (Id.)  Whatever position Mr. Bratz expressed in correspondence with opposing counsel, his representation to the Court indicated he agreed settlement had not been completed according to the proposed terms.

On December 16, 2021, on this notice that the parties had reached settlement, the Court dismissed the case but permitted any party to move to reopen it within 60 days "in the event that the settlement is not perfected."  (Dkt. No. 31.)  By mid-January, when Plaintiffs' counsel still could not obtain the final signature they needed, they proposed Defendants waive the requirement that all twenty-one plaintiffs sign so that the agreement would be effective between

1   Defendants and the 20 who had signed.  (Bratz Decl., Ex. A at 37.)  Plaintiffs would then

2   stipulate to dismissal of all claims with the exception of the plaintiff who had not signed.

3        Mr. Bratz wrote back and explained why the proposed waiver modification was

4   unworkable.  (Id. at 47.)  In particular, he pointed to language in the proposal that it could only

5   be modified by a written agreement by all parties.  Instead, he proposed an amended agreement

6   by the twenty plaintiffs who had signed.  (See id. at 53–64.)

7        Mr. Webb responded to say that they could not get all twenty clients to sign the amended

8   agreement in a timely manner.  (Id. at 65.)  He proposed resolving the case on an individual basis

9   for each of the twenty who had signed.  Mr. Bratz wrote back the same day stating that

10  Defendants would move to enforce the settlement.  (Id.)

11        4.    *Plaintiffs' potential conflict of interest required final authorization*
               *before settlement could be perfected.*

12  Finally, the fact that Plaintiffs' counsel represented multiple clients—some of whom

13  were overseas—provides important context.  Representing multiple clients with individual

14  claims raises the prospect of a concurrent conflict of interest.  See Wash. Rules Prof'l Conduct

15  Rule 1.7.  A potential conflict exists here because Defendants offered a lump-sum amount to

16  settle all claims, leaving Plaintiffs to determine how it is divided up.  Each plaintiff proceeding

17  alone may get more or less than under the settlement, depending on the facts supporting each

18  claim.  In addition, individual plaintiffs may take inconsistent positions during litigation—

19  contradicting one another's testimony, for example.  The plaintiffs are not in conflict because

20  they are adverse parties but because of what is referred to as a material limitation on their

21  attorneys, who may be constrained in the options they can pursue.  See id. at Rule 1.7(a)(2) & id.

22  at Rule 1.7, cmts. 8, 23, 29.

23

24

1    Of course, attorneys can represent multiple clients as done here if certain requirements

2  are met.  See id. at Rule 1.7(b).  The most important requirement is for their attorneys to discuss

3  the potential conflict with their clients and get their clients' authorization to move forward before

4  agreeing to any settlement.  This context—in addition to language barriers and the practical

5  challenges mentioned by Plaintiffs' counsel—explains the importance of getting individual sign-

6  off from each plaintiff and supports the conclusion that Ms. Weiss's response is insufficient to

7  establish unequivocal acceptance.

8       **D.     Plaintiffs' Motion to Strike Defendants' Reply Declaration**

9    In reply, Defendants submitted a declaration that includes a letter to one of the plaintiffs

10  from Plaintiffs' counsel.  (Dkt. No. 47, Declaration of Tauni Ness, Ex. 2.)  The plaintiff

11  submitted the letter to the Washington Employment Security Department as an exhibit in support

12  of his appeal of a denial of his application for unemployment benefits.  (Id. ¶ 4.)  He apparently

13  intended to use the letter to show that he had not quit his job but had been unlawfully terminated.

14  Those documents were served on Defendants by the Department as an adverse party.  The letter

15  was from Ms. Weiss and dated December 1, 2021, so it was after the exchange between her and

16  Mr. Bratz that Defendants point to as showing offer and acceptance.  (Id., Ex. 2 at 4.)

17    Defendants say the letter supports the conclusion that the case has been settled.  (Dkt. No.

18  47.)  Indeed, the letter begins: "As you know, the entire case has been settled for $160,000."

19  (Id.)  Plaintiffs move to strike the reply exhibit on three grounds: it violates rules of professional

20  conduct to submit it; it is inadmissible under federal rules of evidence; and it is an attempt to

21  mislead the Court.  (Dkt. No. 49.)

22

23

24

1          *1.     Ethical rules.*

2          First, Plaintiffs cite Rule 4.2, which bars an attorney from communicating with a

3     represented party about an issue that is the subject of that representation without consent of that

4     party's attorney.  Wash. Rules Prof'l Conduct Rule 4.2.  The rule also requires an attorney to

5     terminate such communication that a represented party initiates.  Id., cmt. 3.  Plaintiffs argue

6     defense counsel should have returned the letter to them as soon as they received it and destroyed

7     their own copy.  The letter is marked "confidential" and "attorney client privileged" and cannot

8     be mistaken for anything other than a letter from counsel.  (Ness Decl., Ex. 2 at 4.)

9          The more apt analysis is whether the letter is protected by attorney-client privilege, but

10    this gives little support to Plaintiffs.  The letter of course qualifies as privileged attorney-client

11    communication under federal common law.  E.g., Clarke v. Am. Com. Nat. Bank, 974 F.2d 127,

12    129 (9th Cir. 1992).  But the individual plaintiff here has waived that privilege by submitting the

13    letter in an administrative proceeding.  See, e.g., Regents of Univ. of California v. Affymetrix,

14    Inc., 326 F.R.D. 275, 279 (S.D. Cal. 2018) ("attorney-client communications made in the

15    presence of, or shared with, third-parties destroys the confidentiality of the communications and

16    the privilege protection that is dependent upon that confidentiality.")

17         *2.     FRE 408.*

18         Second, Plaintiffs ask to strike the exhibit because it violates Federal Rule of Evidence

19    408(a), which provides, in relevant part:

20         (a) Evidence of the following is not admissible—on behalf of any party—either to
           prove or disprove the validity or amount of a disputed claim or to impeach by a
21         prior inconsistent statement or a contradiction:

22              (1) furnishing, promising, or offering—or accepting, promising to accept,
                or offering to accept—a valuable consideration in compromising or
23              attempting to compromise the claim; and

24

(2) conduct or a statement made during compromise negotiations about the claim . . . .

Fed. R. Ev. 408(a).

This rule is designed to facilitate and protect free-flowing settlement talks.  The letter could be excluded under Rule 408 if it was offered to prove or disprove a disputed claim or to impeach a witness by inconsistent statement or contradiction.  However, to the extent it is being offered to prove the existence of a settlement, which is a question of contract law, the Court can consider it.

### 3.    *Attempt to mislead.*

Finally, Plaintiffs argue submitting this exhibit is an attempt to mislead the Court. Defendants argue the parties reached a settlement and this letter could be viewed as supporting that conclusion.  The Court is well-equipped to consider this type of communication in context and is not misled.

Plaintiffs' motion to strike is denied.  But Defendants exaggerate the import of this attorney-client communication.  The letter goes on to explain the terms of the proposed settlement and what the client has to do next—sign the agreement before a notary, agree to dismiss the lawsuit, waive his right to sue on any claims related to his employment, etc.  It is an ordinary client-advice letter about a proposed settlement.  In addition, the exhibit includes only the first page of the letter, depriving the Court of any further context the letter may provide.  The purported admission in this letter carries little weight and does not changes the Court's conclusion that the Parties failed to reach a global settlement.

### E.    Defendants' Motion to Seal

Defendants filed their motion to enforce settlement under seal and filed a separate motion to seal.  "There is a strong presumption of public access to the court's files."  Local Civ. R. 5(g).

1    To overcome this presumption, a party must articulate "compelling reasons supported by specific

2    factual findings that outweigh the general history of access and the public policies favoring

3    disclosure." <u>Kamakana v. City and County of Honolulu</u>, 447 F.3d 1172, 1178–79 (9th Cir.

4    2006) (internal quotation marks and citation omitted).

5         Defendants have not shown there are compelling reasons to seal their motion to enforce

6    settlement or that there are specific factual findings supporting those reasons.  Defendants

7    provide only two reasons.  First, they say this is a "purely private dispute between former

8    employees and their former employer," and that there is no "public-private interests in this case

9    that would disfavor sealing." (Dkt. No. 34 at 3.)  There is no support for the first portion of this

10   claim—most litigation involves disputes between private parties, but the public still has a right of

11   access to court records.  The fact that this is an employment-related dispute does not, by itself,

12   justify sealing records.  And Defendants have the burden backwards on the second part of this

13   argument.  They have to show that there is a compelling reason that favors sealing.  Not the other

14   way around.

15        Second, Defendants claim that confidentiality was a negotiated material term in the

16   settlement.  But accepting this argument presupposes the settlement was completed, a conclusion

17   the Court rejects.  Defendants have not shown a compelling reason supported by specific facts to

18   overcome the public's right of access to court records.  Their motion to seal is denied.

19   **III.    Plaintiffs' Motion to Reopen the Case**

20        As the Court has discussed, the Parties did not perfect settlement.  The Court's dismissal

21   order permitted any party to move to reopen if settlement was not perfected within 60 days.

22   (Dkt. No. 31.)  Plaintiffs' motion is timely because they filed it on January 27, 2022, less than 60

23   days after the dismissal order of December 16, 2021.  The Court grants the motion to reopen.

24

1    **IV.    Plaintiffs' Motion to Withdraw**

2           Finally, Plaintiffs' attorneys move to withdraw counsel for Mohamed Ali.  (Dkt. No. 33.)

3    Although the motion by Plaintiffs' counsel lacked specificity, they state in reply that there is

4    good cause to withdraw because of fundamental disagreements and/or irreconcilable differences.

5    (Dkt. No. 44 at 2 (citing Wash. Rules of Prof'l. Conduct R. 1.16, cmt. 3).)  There is no doubt

6    from the rest of the briefing before the Court that Mr. Ali declined the settlement offer and that

7    Plaintiffs' counsel must withdraw from representing him due to the conflict between him and

8    their other clients.  The motion to withdraw is granted.

9                                                    ***

10          The Parties shall file a joint status report within fourteen (14) days of this order.  Plaintiff

11   Mohamed Ali, who is now pro se, is expected to participate in the joint status report.  Mr. Ali

12   should inform the Court whether he intends to proceed on his own or with new counsel.  The

13   Court will then set a new case schedule and trial date.  The clerk is ordered to provide copies of

14   this order to all counsel and to Mr. Ali.

15          Dated March 11, 2022.

16

17                                           Marsha J. Pechman
                                            United States Senior District Judge

18

19

20

21

22

23

24